UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| COREY J. OWENS, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) No. 4:12 CV 909 JMB |
| | ) |
| JAY CASSADY,[1] | ) |
| | ) |
| Respondent. | ) |

**MEMORANDUM AND ORDER**

Petitioner Corey J. Owens ("Owens") brings this *pro se* action, seeking a Writ of Habeas Corpus, pursuant to 28 U.S.C. § 2254. All matters are pending before the undersigned United States Magistrate Judge, with consent of the parties, pursuant to 28 U.S.C. § 636(c). The Court concludes that the matter may be resolved on the existing record. The Court further concludes that the Petition should be denied and that no certificate of appealability should be issued.

**I. Background**

**A.     Factual Background and Trial**

A jury in Audrain County, Missouri, convicted Owens of two counts of first-degree assault of a law enforcement officer, two counts of armed criminal action, three counts of possession of a controlled substance, and one count of trafficking in the second degree. In view of Owens' criminal history, the trial court sentenced Owens as a prior and persistent drug and felony offender. Owens received a prison sentence of life plus a consecutive term of twenty years of imprisonment.

---

[1] Petitioner is presently incarcerated at the Jefferson City Correctional Center ("JCCC") in Jefferson City, Missouri. Inasmuch as Jay Cassady is superintendent of JCCC and thus is Petitioner's custodian, he should be substituted for Jeff Norman as proper party respondent. Rule 2(a), Rules Governing Section 2254 Cases in United States District Courts.

[Type text]

Owens' charges stemmed from a traffic stop in August 2007.[2] On August 28, 2007, Public Safety Officers in Mexico, Missouri, stopped a vehicle in which Owens was a passenger. During the car stop, Owens jumped out of the rear passenger seat, pointed a revolver, and began firing shots, striking one of the officers "with either bullet fragments or asphalt from ricochet …." (Resp. Exh. G. at 3) Owens returned to the car, retrieved a semi-automatic handgun with a laser sight, and fired more shots at the officers. Owens returned to the car again and then surrendered. Owens was arrested and removed from the car. During the arrest, officers recovered several bags of marijuana, a bag of Ecstasy, a bag of crack cocaine, and cash. (Id.)

Owens' case was tried to a jury over two days in June 2008. (Resp. Exhs. A & B) The trial court empaneled a jury of twelve plus one alternate juror.[3] The State's first witnesses included the four officers who confronted Owens during the August 2007 traffic stop. (Resp. Exh. A at 111-92) Later during the first day of trial, the State presented testimony and evidence regarding evidence collection. During a recess in the evidence collection witness's testimony, defense counsel advised the trial court that one of the jurors – Juror #5 – "may have been sleeping or at least trying not to sleep at some point during testimony today." (Resp. Exh. B at 233) The court advised that he would "try to keep an eye on her." (Id.) Defense counsel commented that the alternate juror could "step in," if Juror #5 could not "hear all the evidence." (Id. at 233-34) The court advised, "I don't think we're at that point yet." (Id. at 234)

On the second day of trial, the prosecutor requested a sidebar and advised the trial court that Juror #5 "seems to be nodding off." (Resp. Exh. B at 324) Defense counsel informed the

---

[2] The general background facts recited herein are taken from a Supplemental Memorandum issued by the Missouri Court of Appeals. (Resp. Exh. G)

[3] The alternate juror was the only African American juror. There is no allegation herein of any Batson violation. (Resp. Exh. H at 20)

court she had noticed that as well. The court stated, "I've been watching her this morning. She hasn't really fallen asleep." (Id.)

After the close of evidence, during an instruction conference, defense counsel again brought up the issue of Juror #5. Counsel advised that "Juror No. 5 a least appeared to be asleep at several points during the trial …, and that [the defense] would prefer that she not sit as a juror because we're not sure she heard all the evidence." (Resp. Exh. B at 357) The trial court explained that "I did see her with her head down as if she might be asleep and I just waited a couple of seconds and obviously she was not because right after that she raised her head, and was blinking her eyes furiously as if something was bothering her eyes …." (Id.) The court ruled that there was not enough to conclude that Juror #5 "was not conscious and paying attention to the evidence. Just because she may have had her head down or was resting her eyes or something like that doesn't mean that she couldn't hear what was going on or see any of the demonstrative exhibits." (Id. at 358) The court denied defense counsel's request to remove Juror #5. The jury deliberated for about two and one-half hours before reaching a verdict. (Id. at 383, 389)

After the adverse verdict, defense counsel filed a motion for a new trial, which alleged that the trial court erred in failing to remove Juror #5. (Resp. Exh. B at 397-402) In support of the new trial motion, defense counsel prepared affidavits from her second chair and a student intern who had assisted in Owens' trial. Defense counsel also advised that the State had information from some of the jurors and that there "seemed to be [a] consensus that they believed [Juror #5] was sleeping." (Id. at 398; see also Motion for Judgement of Acquittal or, in the alternative, a New Trial and Suggestions in Support, Resp. Exh. C at 80-81, 83-84) The trial court rejected this argument. The court explained that, after being advised of the situation, "I started paying more attention to that juror … and I did note that her head would nod at times but

I kept – if her head nodded off I was getting ready to say something and then her head came back up, her eyes came open and it looked more like she was just resting her eyes for a few seconds …." (Resp. Exh. B at 402)

B. **Direct Appeal**

Owens appealed his conviction, raising two issues. Owens argued that the trial court erred in denying defense counsel's request to replace Juror #5 with the alternate juror. Owens also raised a sufficiency of the evidence claim relating to the drug charges. In a summary order, dated April 28, 2008, the Missouri Court of Appeals affirmed the judgment of the trial court. (Resp. Exh. G)

The Missouri Court of Appeals reviewed Owens' sleeping juror claim under an abuse of discretion standard. (Id. at 7) In a separate memorandum supplementing its summary order, the Missouri Court of Appeals explained that "[t]he trial court is in the best position to determine whether a juror will be able to effectively discharge her duties." (Id. quoting Lester v. Sayles, 850 S.W.2d 858, 870 (Mo. Banc 1993)). The court further noted that, "[a]lthough counsels' subsequent reports may have conflicted with the trial court's observations, the trial court was in the best position to determine whether [Juror #5] was asleep and the extent to which [Juror #5] was paying attention to the evidence." (Id.)

C. **Post-Conviction 29.15 Motion Hearing and Appeal**

Following the denial of his direct appeal, Owens filed a motion for post-conviction relief, pursuant to Missouri Rule 29.15. With the assistance of appointed counsel, Owens raised numerous claims, including six claims of ineffective assistance of trial counsel. As relevant to the present § 2254 petition, Owens claimed that his "trial attorney was ineffective when she failed to have Juror #5 … removed from the jury and replaced with the alternate juror." (Resp. Exh. I at 13, 34) In particular, Owens argued that his defense counsel was ineffective because

- 4 -

"she failed to make a record with the other jurors and with co-counsel concerning [Juror #5] sleeping during the trial to support [that juror's] replacement by the alternate juror." (Id. at 35-39) Regarding prejudice, Owens stated that, had defense counsel "questioned jurors and co-counsel on the record before the case was submitted, a reasonable probability exists that the outcome of [Owens'] trial and appeal would have been different." (Id. at 39) Owens did not elaborate further on the issue of prejudice.

On October 22, 2010, the Rule 29.15 motion court held an evidentiary hearing on Owens' claims. Two witnesses testified at the motion hearing – Owens' trial counsel and a student intern who assisted defense counsel. Among other things, trial counsel testified that she made a record of the potential problem with Juror #5 shortly after being advised of the situation. (Resp. Exh. H at 17) The motion court also considered the deposition of one of the jurors from Owens' trial. (Resp. Exh. J) This juror testified that she observed Juror #5 who would appear to doze off for short periods of time. (Id. at 9)

Applying Strickland v. Washington, 477 U.S. 668 (1984), the motion court concluded that Owens had failed to carry his burden. (Resp. Exh. I at 52-53) The motion court held that Owens' trial counsel made "a sufficient record," and "acted as a reasonably competent attorney" in addressing the sleeping juror issue. (Id. at 54, 55) The motion court explained that trial counsel raised the issue during trial and participated in bench conferences regarding Juror #5. Trial counsel also submitted additional information to the trial judge in her motion for a new trial. "Trial counsel believed the record was clear and sufficient for purposes of appeal and her motion for a new trial." (Id. at 55)

The motion court also concluded that Owens had failed to articulate any prejudice. The motion court found "no reasonable probability exists that a different result would have existed at [Owens'] trial had counsel been allowed to question other jurors concerning Juror #5 possibly

sleeping during trial." (Id.)  The motion court explained that, "merely alleging that jurors were observed sleeping during the trial does not sufficiently plead prejudice." (Id. at 53, citation omitted)  The court further explained that Owens had not established when Juror #5 was allegedly sleeping, what evidence Juror #5 may have missed or not heard, or how missing any specific evidence prejudiced Owens or otherwise undermined "confidence in the outcome of the trial." (Resp. Exh. I at 54)

Owens appealed the denial of his Rule 29.15 motion, raising only one point of alleged error for review – whether trial counsel's representation was ineffective regarding allegations that Juror #5 was sleeping.  (Resp. Exh. K at 14)  On December 13, 2011, the Missouri Court of Appeals affirmed the judgment of the Rule 29.15 motion court.  (Resp. Exh. M)  The appellate court relied on the Strickland standard.  (Id. at 2-3)  As it had during Owens' direct appeal, the appellate court noted that "the trial court was in the best position to evaluate whether juror number five slept during trial." (Id. at 4)  The appellate court explained that even "the additional testimony of another juror at the evidentiary hearing failed to establish that juror number five did not hear the evidence.  Consequently, we cannot find trial counsel ineffective for failing to do even more – by presenting testimony of other jurors – to convince the court to change its assessment." (Id.)

## II. Federal Habeas Petition

On May 16, 2012, Owens filed a petition for relief pursuant to 28 U.S.C. § 2254.  On May 31, 2012, United States District Judge Charles A. Shaw issued an Order directing Owens to file an amended petition because his original petition failed to comply with Rule 2(c) of the Rules Governing Section 2254 Cases.  (ECF No. 4)  On June 18, 2012, Owens filed an amended petition in compliance with Judge Shaw's Order.

In his amended petition, Owens raises a single ground for relief. Owens asserts that his trial counsel provided ineffective assistance in that she allegedly "neglected to make a record that Juror #5 … was unable to perform her duties as a juror because of her repeatedly falling asleep during the presentation of evidence." Owens did not file a separate legal memorandum in support of his petition. The State of Missouri filed its response in opposition on September 7, 2012. The State concedes that Owens' claim was properly exhausted. Owens filed a traverse to the State's response on October 26, 2012.

The matter has been briefed and the Court has fully considered the arguments of both parties.

### III. Analysis

**A.** **Applicable Legal Standards**

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") restricts the Court's review of Owens' claim. The Court's review is both "limited and deferential." Lumholt v. Iowa, 327 F.3d 748, 751 (8th Cir. 2003). Under the AEDPA, a federal court may not grant relief to a state prisoner's claim unless the state court's adjudication of the claim "was contrary to, or involved an unreasonable application of, federal law as determined by the Supreme Court, or was an unreasonable determination of the facts in light of the evidence presented in state court." Cole v. Roper, 623 F.3d 1183, 1187 (8th Cir. 2010) (citing 28 U.S.C. § 2254(d)). "A state court decision may be incorrect, yet still not unreasonable …." Id. (citing McGehee v. Norris, 488 F.3d 1185, 1193 (8th Cir. 2009)). A federal court may grant habeas relief "only if the state court decision is both incorrect and unreasonable." Id.

"A state court decision is 'contrary to' the Supreme Court's clearly established precedent if the state court either 'arrives at a conclusion opposite that reached by [the Supreme] Court on a question of law' or 'decides a case differently than th[e] [Supreme] Court has on a set of

materially indistinguishable facts.'" Bucklew v. Luebbers, 436 F.3d 1010, 1016 (8th Cir. 2006) (quoting Williams v. Taylor, 529 U.S. 362, 412-13 (2000)). "A state court decision is an 'unreasonable application' of Supreme Court precedent if it 'identifies the correct governing legal principle … but unreasonably applies that principle to the facts of the prisoner's case.'" Id. "Further, 'a determination of a factual issue made by a State court shall be presumed to be correct' in a federal habeas proceeding." Cole, 623 F.3d at 1187 (quoting 28 U.S.C. § 2254(e)(1)).

The sole ground raised in Owens' Petition alleges a claim of ineffective assistance of counsel. In order to prevail on that claim, Owens must demonstrate both that counsel's performance was constitutionally deficient, and that he was prejudiced thereby. See Strickland v. Washington, 466 U.S. 668, 687, 694 (1984). "Judicial scrutiny of counsel's performance is highly deferential, indulging a strong presumption that counsel's conduct falls within the wide range of professional judgment." Bucklew, 436 F.3d at 1016 (citing Strickland, 466 U.S. at 689). Thus, "[u]nder Strickland, counsel's performance is 'measured against an objective standard of reasonableness,' and 'hindsight is discounted by pegging adequacy to counsel's perspective at the time … decisions are made, and by giving a heavy measure of deference to counsel's judgments.'" Id. (quoting Rompilla v. Beard, 545 U.S. 374, 380-81 (2005)).

In order to prevail on the prejudice prong, Owens must show "that but for counsel's deficiency there is 'a reasonable probability that … the result of the proceeding would have been different.'" Lamar v. Graves, 326 F.3d 983, 985 (8th Cir. 2003) (quoting Strickland, 466 U.S. at 694). See also Bucklew, 436 F.3d at 1016 (Strickland "[p]rejudice is shown by demonstrating that counsel's errors were so serious that they rendered the proceedings fundamentally unfair or the result unreliable.") (citing Lockhart v. Fretwell, 506 U.S. 364, 372 (1993)). In order to succeed, Owens must carry his burden on both prongs of the Strickland standard. See

Worthington v. Roper, 631 F.3d 487, 498 (8th Cir. 2011) ("Failure to establish either Strickland prong is fatal to an ineffective-assistance claim.").

"Taken together, AEDPA and Strickland establish a 'doubly deferential standard of review.'" Williams v. Roper, 695 F.3d 825, 831 (8th Cir. 2012) (quoting Cullen v. Pinholster, 131 S. Ct. 1388, 1410 (2011)), cert. denied, Williams v. Steele, 134 S. Ct. 85 (2013). "Under AEDPA, we must then give substantial deference to the state court's predictive judgment [regarding Strickland prejudice]. So long as the state court's decision was not 'contrary to' clearly established law, the remaining question under the 'unreasonable application' clause of § 2254(d) is whether the state court's determination under the Strickland standard is unreasonable, not merely whether it is incorrect." Id. (citing Harrington v. Richter, 131 S. Ct. 770, 785 (2011)). "This standard was meant to be difficult to meet, and 'even a strong case for relief does not mean the state court's contrary conclusion was unreasonable.'" Id. (quoting Harrington, 131 S. Ct. at 786)." "If the state court 'reasonably could have concluded that [the petitioner] was not prejudiced by counsel's actions,' then federal review under AEDPA is at an end." Id. at 832 (quoting Preno v. Moore, 131 S. Ct. 733, 740, 744 (2011)).

**B.      Ground -- Sleeping Juror Claim**

Owens contends that his defense counsel was constitutionally deficient in making a sufficient record regarding allegations that Juror #5 "was unable to perform her duties as a juror because of her repeatedly falling asleep during the presentation of evidence …." (ECF No. 5 at 5) Owens raised substantially the same argument in his unsuccessful Rule 29.15 post-conviction motion. The motion court, applying the Strickland standard, denied Owens claim. (Resp. Exh. I at 52-53) The motion court concluded that defense counsel "acted reasonably under the circumstances." (Id. at 54) The motion court further concluded that Owens had completely failed to show any meaningful prejudice resulting from trial counsel's conduct. (Id. at 54-55)

The Missouri Court of Appeals also applied the Strickland standard and affirmed the motion court. In particular, the Missouri Court of Appeals concluded that Owens' defense counsel cannot be faulted for failing to do more (e.g., by presenting testimony from other jurors) to convince the trial court to replace Juror #5. (Resp. Exh. M at 4)

As explained below, the Missouri court's resolution of Owens' claim reflects a reasonable application of federal law, namely the performance and prejudice prongs of Strickland.

### 1. **Performance**

Under both Missouri and federal law, the decision to remove a juror, including an allegedly sleeping juror, lies within the sound discretion of the trial judge. See Lester v. Sayles, 850 S.W.2d 858, 870 (Mo. Banc 1993); United States v. Green, 428 F.3d 1131, 1135 (8th Cir. 2005); United States v. Key, 717 F.2d 1206, 1209 (8th Cir. 1983). In the present case, it is not disputed that defense counsel addressed the issue of a potentially sleeping juror with the court twice during trial, again during an instruction conference before deliberation, and once again in a motion for a new trial. During the instruction conference, defense counsel requested that Juror #5 be replaced with the alternate. (Resp. Exh. B at 357-58) Defense counsel supplemented Owens' motion for a new trial with affidavits from co-counsel and an intern, as well as information indicating that other jurors had observed Juror #5 dozing off. (Id. at 397-402) There can be no doubt that the trial court was aware of the allegation that Juror #5 had slept through portions of the trial and had considered it. Therefore, the trial court exercised its discretion in an informed manner.

The question becomes whether defense counsel was constitutionally ineffective in failing to take further action. After defense counsel initially advised the trial court regarding Juror #5, that court indicated that it monitored the situation and concluded that, in that court's estimation,

Juror #5 was not sleeping through any significant aspect of the case. (Id. at 402) The 29.15 motion court conducted an evidentiary hearing, which included information from another trial juror. After that evidentiary hearing the 29.15 motion court concluded that Owens had failed to show that Juror #5 did not hear the evidence. (Resp. Exh. I at 55)

The 29.15 motion court and Missouri Court of Appeals concluded that counsel was not required to take further action. That decision was not unreasonable. This Court must presume that the state court correctly determined the factual matter of whether Juror #5 may have slept through an important aspect of the trial. See 28 U.S.C. § 2254(e)(1); Evans v. Luebbers, 371 F.3d 438, 441 (2004) (reviewing federal courts must "presume that the findings of fact by [the] state court are correct unless the petitioner rebuts that presumption by clear and convincing evidence"). Furthermore, this Court must indulge a "strong presumption" that defense counsel's conduct fell within the wide range of reasonable representation. Strickland, 466 U.S. at 689.

In the present case, defense counsel -- (1) raised the juror issue promptly upon learning of it, (2) reiterated the issue at the next opportunity, (3) raised the issue again before submitting the case to the jury, (4) requested the removal of the juror, and (5) supplemented the record and raised the issue again in post-trial pleadings. Moreover, the record indicates that the trial court had made its own observations regarding Juror #5 and intended to rely on those observations. Therefore, on the basis of the available record, this Court cannot say that the Missouri court's decision involved an unreasonable application of the performance prong of Strickland, or involved an "unreasonable determination of the facts in light of the evidence presented in state court." Cole, 623 F.3d at 1187.

    **2.**    **Prejudice**

Even if Owens were to show that any reasonable attorney would have taken additional steps to try to remove Juror #5 for allegedly sleeping, Owens would still not be entitled to relief

under § 2254 because he has not satisfied the prejudice prong under Strickland. In this regard, the 29.15 motion court explained that that a juror was observed sleeping at trial does not, by itself, plead any prejudice. (Resp. Exh. I. at 53) The 29.15 motion court also noted that Owens never identified any evidence which was allegedly missed that would also prejudice Owens. (Resp. Exh. I at 54) The Missouri Court of Appeals affirmed. Having reviewed the record in this matter, and having further considered Owens' petition and traverse, this Court agrees with the State court's conclusion that Owens has not shown any prejudice.

Owens asserts only conclusory prejudice, which is insufficient.[4] This case is not the type of case in which prejudice may be presumed. See United States v. Cronic, 466 U.S. 648 (1984); McGurk v. Stenberg, 163 F.3d 470, 474 (8th Cir. 1998) ("For the most part, courts have presumed prejudice only where the defendant establishes a constructive denial of counsel.") (citing cases). Owens must show actual prejudice. To meet his burden, "the likelihood of a different result must be substantial, not just conceivable." Williams, 695 F.3d at 831 (citation omitted).

The Eighth Circuit has clearly explained that, even though a showing of prejudice may be difficult or impracticable, a reviewing court may not dispense with the prejudice requirement of Strickland. See Young v. Bowersox, 161 F.3d 1159, 1160-61 (8th Cir. 1998). In Young, the prosecution used all of its peremptory strikes to remove African American jurors and defense counsel failed to lodge an objection. Id. at 1160. The Eighth Circuit declined to consider the reasonableness of counsel's conduct because the petitioner in that case could not "show he was prejudiced by [counsel's] oversight." Id. In particular, the Court noted that there was no showing that, "the presence of the black juror[s] in question on the jury that tried him would

---

[4] See Owens' Traverse at 3 ("If Juror #5 … would have been replaced with the Alternate juror the outcome of Petitioner's trial would have been [different]."). (ECF No. 14)

have affected the outcome at all." Id. at 1161 (quoting Wright v. Nix, 928 F.2d 270, 274 (8th Cir. 1991)).

Like the petitioner in Young, Owens cannot show that the outcome of his case would have been different had Juror #5 been removed and replaced with the alternate juror. The 29.15 motion court noted that Owens had not identified what evidence or testimony might have been missed.[5] Accordingly, based on the record, "the state court reasonably could have concluded that [Owens] was not prejudiced by counsel's actions, [therefore] federal review under AEDPA is at an end." Williams, 695 F.3d at 832 (internal quotations omitted).

## IV. Conclusion

The Court concludes that Owens is not entitled to federal Habeas relief on the ground presented in his Petition. Owens has failed to establish that his state court proceedings were contrary to, or involved an unreasonable application of, clearly established federal law, or based upon an unreasonable determination of the facts presented in those proceedings. See 28 U.S.C. § 2254(d). Moreover, an evidentiary hearing is not warranted because the existing "record already contains all the facts necessary to resolve [Owens'] claim[s]." Johnston v. Luebbers, 288 F.3d 1048, 1060 (8th Cir. 2002) (explaining that habeas petitioners are entitled to evidentiary hearings only under narrow circumstances). See also 28 U.S.C. § 2254(e)(2).

Finally, Owens has failed to make a substantial showing of the denial of a constitutional right sufficient to justify the issuance of a Certificate of Appealability. See 28 U.S.C. § 2253(c)(2).

Accordingly,

---

[5] Owens asserts that the outcome of his trial would have been different had the alternate juror been seated. Although Owens supplied the Rule 29.15 motion court with a deposition of one of the jurors, he did not provide any such testimony from the alternate juror.

**IT IS HEREBY ORDERED** that the Petition of Corey J. Owens for habeas corpus relief is **DENIED**.

**IT IS FURTHER ORDERED** that Petitioner's request for an evidentiary hearing is **DENIED**.

**IT IS FURTHER ORDERED** that a Certificate of Appealability will not be issued by this Court.

A separate Judgment in accordance with this Memorandum and Order is entered this same date.

Dated this  11th  day of June, 2015.

*/s/ John M. Bodenhausen*
JOHN M. BODENHAUSEN
UNITED STATES MAGISTRATE JUDGE